Kerry E. Connolly
Connolly Law
One Battery Park Plaza, 32nd Floor
New York, NY 10004
(212) 372-7333 - telephone
(917) 591-4858 – facsimile
kconnolly@connollylaw.us.com
 *Attorneys for Plaintiffs Moises Cruz, Saul Soto,*
*Victor Tapia and Juan DeJesus,*
*for themselves and on behalf of those similarly situated*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | | |
|---|---|---|
| MOISES CRUZ, SAUL SOTO, VICTOR TAPIA AND JUAN DEJESUS, individually and on behalf of others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | Case No.: |
| | : | |
| -against- | : | **COMPLAINT** |
| | : | |
| SPACE NY 50TH ST LLC, EDEN BALLROOM LLC, ANTONIO PIACQUADIO, CARLO SENECA, MICHAEL GENITON and DAVID MUNDO, | : | Collective Action and Class Action Complaint |
| | : | *Jury Trial Demanded* |
| Defendants. | | |

-------------------------------------------------------------x

Plaintiffs Moises Cruz, Saul Soto, Victor Tapia and Juan DeJesus,

individually, and on behalf of other similarly situated employees, by their

undersigned counsel, Connolly Law, as and for their Complaint against

defendants Space NY 50th St LLC ("Space"), Eden Ballroom LLC ("Eden")

(collectively, the "Corporate Defendants"), Antonio Piacquadio, Carlo Seneca,

Michael Geniton and David Mundo (collectively, the "Individual Defendants"), allege the following:

## JURISDICTION AND VENUE

1.      Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 because this case arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). The Court has supplemental jurisdiction over the claims asserted under the New York Labor Law ("NYLL") pursuant to 28 U.S.C. § 1367.

2.      Venue is appropriate pursuant to 28 U.S.C. § 1391 in that this is the judicial district in which the events giving rise to the claims occurred and defendants transact business within this district.

3.      This Court has personal jurisdiction over the defendants, pursuant to New York Civil Practice Law and Rules § 301, in that, inter alia, defendants reside and/or transact business within this State, employed Plaintiffs within the State of New York and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the laws of the State of New York, and accordingly may be served with process pursuant to Rule 4(h)(1), Fed. R. Civ. P.

## THE PARTIES

4.      Upon information and belief, defendant Space is a domestic limited liability company organized and existing under the laws of the State of New

York and maintains its principal place of business at 637 W. 50th Street, New York, NY 10019.

5.    Upon information and belief, defendant Eden is a domestic limited liability company organized and existing under the laws of the State of New York and maintains its principal place of business in New York State.

6.    Upon information and belief, at all times hereto, the Corporate Defendants have been a business or enterprise engaged in interstate commerce employing more than two employees and earning gross annual sales over $500,000.

7.    Upon information and belief, at all relevant times hereto, Defendants have been and continue to be "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 203.

8.    Defendants constitute an enterprise within the meaning of the FLSA, 29 U.S.C. 203 (r).

9.    At all relevant times hereto, Plaintiffs were engaged in interstate "commerce" within the meaning of the FLSA.

10.    Upon information and belief, Individual Defendant Antonio Piacquadio resides in Westchester, New York.

11.     Upon information and belief, Individual Defendant Carlo Seneca resides in Staten Island, New York.

12.     Upon information and belief, Individual Defendant Michael Geniton resides in New Jersey.

13.     Upon information and belief, Individual Defendant David Mundo resides in New York.

14.     Upon information and belief, the Individual Defendants are owners and/or managers of the Corporate Defendants.

15.     Upon information and belief, the Corporate Defendants are the owners of Space, which is a nightclub providing food, drink and music to customers and located at 637 W. 50th Street, New York, NY 10019.

16.     Defendants employ dishwashers, porters, bottle hosts, bartenders, barbacks, waiters, busboys and other employees performing similar work in both the front and back of the house.

17.     Space opened in September 2014.

18.     On information and belief, the Individual Defendants exercise sufficient control of their day-to-day operations to hold them individually liable as Plaintiffs' "employer" under the FLSA and NYLL.

19.     The Individual Defendants exercised direct control over the Plaintiffs and the putative FLSA Collective and Class members.  They exercised

the power and authority to:  (i) hire and fire, (ii) determine rate and method of pay, (iii) determine work schedules, (iv) direct the method in which work was performed, and (v) otherwise affect the quality of employment of the Plaintiffs, the FLSA Plaintiffs and the Class members.

20.     Additionally, upon information and belief, the Individual Defendants are liable for the wages of the Plaintiffs and those similarly situated under NY Limited Liability Company Law § 609.

21.     On information and belief, the Corporate Defendants operate under common ownership, are managed by the same individuals and subject their employees to the same policies and procedures, in particular, policies and procedures relating to the violations alleged in this Complaint.

22.     The Corporate Defendants and Individual Defendants are "employers" within the meaning of the FLSA.

23.     Each of the Corporate Defendants is an "enterprise engaged in commerce" within the meaning of the FLSA.

24.     At all relevant times, the work performed by Plaintiffs, the FLSA Collective Plaintiffs and the Class members was directly essential to the business enterprise operated by the Defendants.

25.     Upon information and belief, Defendants Piacquadio, Seneca and Geniton are the largest shareholders of the Corporate Defendants, and as such,

are individually liable for unpaid wages under Section 609 of the New York State Limited Liability Company Law.

26.    At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the NYLL § 190 and § 651.

27.    Plaintiff Moises Cruz is an adult individual who is a resident of Red Bank, New Jersey.

28.    Cruz was employed by Defendants as a porter at Space NY within the last three years.

29.    Cruz is a covered employee within the meaning of the FLSA and the NYLL.

30.    Plaintiff Saul Soto is an adult individual who is a resident of New York.

31.    Soto was employed by Defendants as a handyman and barback at Space NY.

32.    Soto is a covered employee within the meaning of the FLSA and the NYLL.

33.    Victor Tapia is an adult individual who is a resident of New York.

34.    Tapia was employed by Defendants as a barback at Space NY.

35.    Tapia is a covered employee within the meaning of the FLSA and the NYLL.

36.     Juan DeJesus is an adult individual who is a resident of New York.

37.     De Jesus was employed by Defendants as a barback at Space NY.

38.     De Jesus is a covered employee within the meaning of the FLSA and the NYLL.

## NATURE OF THE ACTION

39.     This lawsuit seeks to recover unpaid wages, unpaid overtime, minimum wages, unpaid spread-of-hours wages and misappropriated tips for Plaintiffs and their similarly situated co-workers – servers, bussers and other hourly food service workers who have worked at the nightclub operated by the Defendants.

40.     Plaintiffs bring this action for themselves and on behalf of similarly situated current and former employees of defendants who elect to opt-in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b) to remedy violations of the wage-and-hour provisions of the FLSA by defendants that have deprived Plaintiffs and others similarly situated of their lawfully earned wages.

41.     Plaintiffs also bring this action for themselves and on behalf of similarly situated current and former employees of defendants pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the New York Labor

Law ("NYLL") Article 6, §§ 190 et seq., and Article 19, §§ 650 et seq., and the

supporting New York State Department of Labor regulations.

42.    Plaintiff Moises Cruz also brings a claim of retaliation against

Defendants for firing him after he repeatedly requested that Defendants pay him

his unpaid wages, in violation of FLSA, 29 U.S.C. § 215(a)(3) and NYLL Article 7,

§ 215.

43.    Since Defendants opened the club in September 2014, they have

breached the FLSA and the NYLL as follows:

(a)    Defendants have failed to compensate Plaintiffs for all hours worked at
       the statutory minimum wage as required by federal and state law and
       regulations;

(b)    Defendants failed to pay Plaintiffs who worked over forty (40) hours
       per week overtime compensation as required by federal and state law
       and regulations;

(c)    Defendants failed to provide Plaintiffs with spread-of-hours payments
       under 12 NYCRR 146-1.6;

(d)    Defendants misappropriated tips in violation of NYLL 196-d;

(e)    Defendants failed to timely pay wages in violation of NYLL 191;

(f)    Defendants failed to provide Plaintiffs with call-in payments required
       under 12 NYCRR 146-1.5; and

(g)    Defendants failed to provide Plaintiffs with a wage notice and paystubs
       as required by NYLL § 195.

44.    Defendants also violated the FLSA and the NYLL by retaliating

against Moises Cruz for complaining about the foregoing wage and hour

violations.

45.     Defendants have knowingly and willfully engaged in a policy, pattern or practice of violating the FLSA and the NYLL, as detailed in this Complaint.

## FLSA COLLECTIVE ACTION ALLEGATIONS

46.     The First and Third Claims for Relief are properly brought by Plaintiffs pursuant to 29 U.S.C. § 216(b), for themselves and on behalf of all non-exempt persons employed by Defendants in any non-exempt position and by Plaintiffs Soto, Tapia and DeJesus on behalf of all tipped persons employed by Defendants on or after September 12, 2014 and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b).  The FLSA Collective Plaintiffs are readily ascertainable.  For purpose of notice and other purposes related to this action, their names and addresses are readily available from the Defendants.  Notice can be provided to the FLSA Collective plaintiffs via first class mail to the last address known to defendants pursuant to 29 U.S.C. § 216(b).

47.     Plaintiffs sue for themselves and on behalf of other similarly situated service employees who worked for the Defendants and who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and specifically the collective action provision of FLSA 29 U.S.C. § 216(b).  This action claims that defendants violated the wage-and-hour provisions of the FLSA by depriving Plaintiffs, as well as others similarly situated to the named Plaintiffs, of their lawful wages.

48.     At all relevant times, Plaintiffs and other putative FLSA Collective plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to the defendants' decisions, plans and common policies, programs, practices, procedures, protocols, routines and rules by willfully failing and refusing to pay overtime for those hours worked in excess of forty hours per week, failing to pay them at the legally required minimum wage for all hours, failing to pay wages due, failing to pay spread-of-hours pay, and misappropriating tips. The claims of Plaintiffs stated herein are essentially the same as those of the other putative FLSA Collective plaintiffs.

49.     Plaintiffs and all similarly situated employees who elect to participate in this action seek unpaid compensation, an equal amount of liquidated damages and prejudgment interest, attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b), a declaration that Defendants' acts are in violation of the FLSA and an injunction requiring Defendants to comply with the wage and hour laws in the future.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

50.     Plaintiffs bring the Second and Fourth Claims for Relief, pursuant to Fed. R. Civ. P. 23, for themselves and on behalf of all non-exempt persons, including those in a tipped position, employed by Defendants on or after September 12, 2014.

51.     All such persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of defendants. The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

52.     Excluded from the Rule 23 Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family, and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

53.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presentation within the sole control of defendants, upon information and belief, there are more than fifty (50) members of the Class.

54.     Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions.  All the Class members were subject to the same corporate practices of defendants, as alleged herein, of failure to pay the straight time, overtime and spread of hours wages owed in the case of all Plaintiffs, and, in addition, made illegal deductions from wages and illegally retained tips.  Defendants' policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member.  Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

55.     Plaintiffs are able to fairly and adequately protect the interest of the Class and have no interest antagonistic to the Class.  Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.  Plaintiffs' attorneys have previously represented plaintiffs in such cases.

56.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly where current employees are afraid to file suit in their own name because they fear (rightly) that they will be fired if they do so.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment and future efforts to

secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

57.    Moreover, a class action is helpful in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.  Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests

through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to fashion methods to efficiently manage this action as a class action.

58.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)    Whether Defendants violated NYLL Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 137, as alleged herein;

b)    Whether Defendants failed to pay minimum wage to Plaintiffs;

c)    Whether Defendants failed to pay overtime for hours worked in excess of forty hours per week;

d)    Whether Defendants failed to pay spread-of-hours in any day in which: (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur;

e)    Whether Defendants misappropriated wages and tips from Plaintiffs and the Rule 23 Class;

f)    Whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law;

g)    The nature and extent of class wide injury and the measure of damages for those injuries.

h)    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## FACTS COMMON TO ALL CLAIMS

59.    Defendants committed the following acts knowingly, intentionally and willfully.

60.     Defendants have a pattern and practice of failing to compensate their employees in accordance with federal and state law.

61.     Defendants employ porters, hosts and hostesses, bartenders, bar backs, waiters, busboys and others, all of whom are not paid the wages they are owed, in violation of the wage and hour laws.

62.     Defendants have maintained a policy and practice of failing to compensate Plaintiffs and other similarly situated employees for every hour they have worked at the statutory minimum wage.

63.     Defendants have maintained a policy and practice of failing to pay a number of employees any minimum wage at all, neither the minimum wage nor the tip-credit minimum wage.

64.     Defendants have maintained a policy and practice of failing to pay overtime compensation to Plaintiffs and other similarly situated employees who worked in excess of forty (40) hours per week.

65.     Defendants have maintained a policy and practice of failing to pay Plaintiffs and other similarly situated employees spread-of-hours pay for every hour they have worked in excess of ten (10) hours in any given day.

66.     Defendants have maintained a policy and practice of misappropriating employees' tips.

67.     Defendants have maintained a policy and practice of failing to provide proper wage notices and paystubs.

68.     Defendants have maintained a policy and practice of failing to timely pay Plaintiffs and other similarly situated employees.

69.     Defendants committed the foregoing acts against the Plaintiffs, the FLSA Collective Plaintiffs and the members of the Class.

70.     The venue where Plaintiffs and Class members worked, Space Ibiza NY, is an offshoot of the world-famous Space nightclub in Ibiza, Spain.  It opened on September 12, 2014 and is primarily a dance club hosting several music events per week featuring well known deejays and artists. In addition, the club is available for events such as live music & concerts (with premium sound options); Corporate events; Custom Branded events; Photo/film/commercial shoots; Couture fashion shows (runway & salon style); Art Shows; full banquets, weddings & cocktail parties; Birthdays and bar/bat mitzvahs.

71.     The club is also open for holiday events like New Year's Eve and Halloween.  For example, over the New Year period, the club was open three nights, hosting approximately four thousand people per night and even hosting two events on one night, first hosting four thousand people and then an additional two thousand people at the after-hours event.

72.     Bouncers keep track of the thousands of attendees by using a clicker, this is done to keep track of numbers and to ensure the club has enough supplies - food and drink - for its guests.

73.     For most dance events the club books "world-renowned and emerging" deejays and artists to perform.  The club's cover charge is higher at the door than online and varies depending on the performer or the event.  In general, a regular cover charge is around $40.  VIP tickets can be hundreds of dollars.  Some tickets are available online through presale but the rest are sold by promoters and at the door.  All tickets sold at the door are paid in cash only.

74.     Drinks are often paid for in cash as the bar has a $50 minimum for credit cards. With water at $7, beers from $9 and spirits from $14, this a cash-rich enterprise.  The bar charges a mandatory gratuity of twenty percent on credit cards and the Coat Check charge is $6.

75.     Table service is another source of revenue, with the club charging thousands of dollars per table.

76.     The nightclub is busy; it hosts several events in a week.  Plaintiffs were never paid overtime when they worked over 40 hours per week.

77.     Plaintiffs' shifts regularly last 12 hours or more, often from 8 p.m. until 8 am or later.  Events can last ten hours or longer and Plaintiffs work before and after the events, preparing for the event and cleaning up afterwards.

78.     On days when the club hosted two events, Plaintiffs would often work an 8 p.m. until 8 a.m. shift and then begin another shift at 12 p.m. that same day. Plaintiffs were not paid spread-of-hours pay on these occasions.

79.     Defendants agreed to pay porters ten dollars per hour.  However, Defendants regularly failed to pay Plaintiff Cruz and other porters the agreed upon minimum wage and also failed to pay: (a) overtime pay when the porters worked in excess of forty hours per week, and (b) spread of hours pay when they worked ten or more hours per day.

80.     Defendants failed to pay bartenders, barbacks, waiters and busboys any minimum wage, any overtime pay or any spread of hours pay.  Instead, they were paid only their tips.  Moreover, Defendants, on occasion, even failed to pay Plaintiffs the tips they earned, often misappropriating them.

81.     Defendants repeatedly told Plaintiffs at the end of an event that they did not have cash to pay workers, not even cash to pay workers' tips. This is despite the fact that Defendants collected large sums of cash from ticket sales and drinks purchased on those evenings.

82.     Defendants kept a safe in their office for cash receipts. However, on evenings when the club was very busy, the owners would personally collect the receipts. On Friday nights, Defendant Geniton would usually collect the cash receipts.

83.     Plaintiff Cruz worked as a porter for Defendants for three months. Plaintiff was to be paid $10 per hour.  However, Defendants regularly failed to pay Plaintiff for all hours worked.

84.      In addition, Plaintiff Cruz was not paid for overtime hours worked when he worked more than forty hours in a week, nor was he paid spread-of-hours pay for times when he worked more than a ten hour shift or when he worked two shifts in the same day.

85.     Plaintiff Cruz was not paid for almost a month.  He went to speak to the manager to request his wages.  The manager, defendant David Mundo, told him to come back later.  Cruz then spoke to one of the owners, defendant Geniton who promised that he would pay Cruz at the end of the night.  But at the end of the night, he failed to pay him and promised to pay Cruz the next day.

86.     The next day Geniton did not show up at the Club and no money was left for Cruz.  When Cruz asked Mundo for his wages, Mundo told him he did not have the authority to pay him, as that was up to the owner.  Cruz was not paid.

87.     Plaintiff Cruz was then summarily fired in retaliation for his repeated requests for payment.  He was never paid any of the monies he was owed for the last several weeks that he worked.

88.     Plaintiff Saul Soto ("Soto") worked two jobs at Space NY.  He worked as a handyman five to six days a week and as a barback two nights a

week, not including special events.  Soto's handyman shift generally lasted from

12 p.m. to 8 p.m. or 9 p.m. without any breaks.  For his work as a handyman he

was supposed to be paid $15 per hour.  However, the owners regularly paid him

only $10 per hour.  (In 2016, this was less than the NY minimum wage of $10.50.)

89.    When Soto complained that he had not been paid his hourly wage

for maintenance work, he was told "you work as barback, so it's okay you are

not getting paid".  Since defendants did not pay barbacks an hourly wage, this is

presumably a reference to tips Soto made as a barback.

90.    On days when Soto worked a maintenance shift and a barback

shift, he sometimes worked more than 24 hours in a row.  Soto would usually

clock in for his handyman job at 12 p.m. and clock out at 8 p.m. or 9 p.m. He

would then clock in as a barback around 9 p.m. and clock out at the end of the

shift.  He did not receive an hourly salary for his work as a barback, nor did he

receive any overtime pay or spread of hours pay for this work. On at least fifteen

to twenty occasions Soto slept over at Space NY on a sofa after his barback shift

in order to work the following day.

91.    At the defendants' request, Soto often brought additional

maintenance people to work at the building.  Sometimes Soto had to pay the

maintenance workers out of his own pocket when defendants failed to pay

workers.  Defendants still owe Soto between three and four hundred dollars for

payments Soto made to workers.  Soto asked Mundo and then the owners,

defendants Geniton and Antonio Piacquadio, to pay the maintenance workers. He was simply told, "we can't pay anything now"

92.     After working the New Year's shifts, Soto asked to be paid. Piacquadio told him "I can't pay anything now".

93.     When Soto returned a few days later to collect his wages, Mundo asked "What the fuck are you doing here? Come on, nigger".   Soto turned to Piacquadio who told him "From now on, you deal with me."   Mundo then insisted that Soto had to go.   Soto asked "Why, I've been working since yesterday at 2? Why?"   One of the bouncers came over to Soto and said, "you've got to go", grabbed him and forced him out of the building.

94.     When Soto returned again to be paid the bouncer did not let him in. Soto was paid neither his hourly wage nor his tips from his New Year's Eve shifts.

95.     Three weeks later Mundo called Soto and asked "Hey, how are you feeling?".   He needed Soto for an event.   Mundo told Soto that Geniton had assured him that if Soto came to work, Soto would be paid for the day and he would also be paid the outstanding monies he was owed.

96.     However, when it came time to pay Soto, Geniton said "I never said I'd pay him." Soto got upset and Mundo asked Soto "Are you going to make a scene now?".   Geniton then said that he thought he had some money and gave

Soto $300. This was partial payment of his outstanding wages that Soto had not received since November and December 2016.

97.    Soto worked for Space NY for two years. He was hired by Morgan, the-then manager. In the summer of 2015, Space NY hired Mundo.

98.    After Mundo's arrival, Soto had problems getting paid. Mundo's ex- girlfriend does the cleaning of the club, his girlfriend works as a bartender and bottle hostess and his brother works as a bottle host. While working at the bar Mundo's friend asked for free drinks and when Soto said "I can't", Mundo's brother, Mundo and a bouncer all shouted at him. Mundo threatened Soto, saying "If you ever talk to my friend, he's my bro, I'll throw you out myself".

99.    While those close to Mundo were regularly and well paid, Soto did not receive all his tips because Mundo kept part of his tips. On one occasion Soto went to the office to ask for his tips and they wrote down that he was missing $400.

100.    Plaintiff Juan de Jesus worked as a busboy at Space NY from September 2016 until January 2017. He regularly worked Friday and Saturday nights, and for longer periods over Halloween and New Year. Like the other busboys at Space NY, DeJesus was not paid an hourly wage for his work, but received only tips. Though his shifts typically lasted more than twelve hours, he did not receive spread of hours pay either.

101.    For the thirty plus hours he worked over New Year's, DeJesus was paid only in tips and received neither any hourly wage nor any spread of hours pay for his shifts which lasted in excess of ten hours and for days where he worked two shifts.

102.    Plaintiff Victor Tapia worked as a busboy at Space NY from July 2016 until January 2017.  He regularly worked two nights a week and his shift typically lasted from 8 p.m. until 9 a.m.  Like de Jesus and other busboys, Tapia was not paid an hourly wage for his work, but received only tips. Though his shifts typically lasted thirteen hours, Tapia did not receive spread of hours pay. In addition, defendants misappropriated Tapia's tips.

103.    Defendants often failed to pay even the tips to which Plaintiffs were entitled.  On numerous occasions, Defendants informed Plaintiffs that they did not have enough cash to pay Plaintiffs their tips.

104.    Instead, Defendants stated they would pay Plaintiffs the tips they were owed by check.  Plaintiffs were given checks and told to cash the checks on a future date.  When Plaintiffs attempted to cash the checks as directed, the checks bounced, leaving some plaintiffs, including Tapia, not only unpaid but with bounced check fees as well.

105.    Porters, who were supposed to earn $10 per hour, were often not paid their wages.  Porters were never paid overtime when they worked more than 40 hours per week, either at the regular rate of pay or at the overtime rate of

pay.  Porters were never paid spread-of-hours pay for shifts where they worked

more than ten hours or where they worked two shifts in one day.

106.     Defendants' policy is to not pay workers.  Defendants rely on the

fact that most workers, when they realize they will not be paid, simply quit.  The

Defendants' repeated failure to pay any wages to workers is the reason for their

high turnover of staff.

107.     In the case of Cruz, Defendants did not dispute he was owed his

wages, they simply refused to timely pay him, or at all Plaintiff Soto has still not

been paid all his wages. Plaintiffs De Jesus and Tapia who worked as busboys,

are owed an hourly wage, overtime pay and spread of hours pay for their work

as busboys at the club.

<u>FIRST CLAIM FOR RELIEF</u>

(FLSA Minimum Wage/Overtime Violations, 29 U.S.C. §§ 201 *et seq*.  Brought
<u>by Plaintiffs for Themselves and on Behalf of the FLSA Collective)</u>

108.     Plaintiffs, for themselves and on behalf of the FLSA Collective,

repeat, reallege and incorporate by reference all allegations in all preceding

paragraphs.

109.     At all relevant times, Defendants have engaged in a widespread

pattern, policy and practice of willfully violating the FLSA.

110. At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiffs and the FLSA Collective the minimum wages to which they are entitled under the FLSA.

111. Defendants willfully failed and refused to pay Plaintiffs and FLSA Collective for all hours worked.

112. Defendants willfully failed and refused to pay Plaintiffs and FLSA Collective for all overtime hours worked in excess of forty hours per week.

113. Defendants are not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. § 203(m), and supporting federal regulations, including but not limited to 29 C.F.R. § 531.50 et seq., because Defendants did not permit Plaintiffs and the FLSA Collective to retain all the tips they received, in violation of the FLSA, 29 U.S.C. § 203(m).

114. As a result of Defendants' violations of the FLSA, Plaintiffs have suffered damages by being denied minimum wages required by the FLSA and are entitled to the recovery of those wages in amounts to be determined at trial, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

115. As a result of Defendants' violations of the FLSA, Plaintiffs have suffered damages by being denied overtime wages required by the FLSA and are entitled to the recovery of those wages in amounts to be determined at trial,

liquidated damages, prejudgment interest, attorneys' fees, costs and other

compensation pursuant to 29 U.S.C. § 207.

116.    Defendants' unlawful conduct, as described in this Complaint, has

been willful and intentional.  Defendants were aware or should have been aware

that the practices described in this Complaint were unlawful.  Defendants have

not made a good faith effort to comply with the FLSA with respect to the

compensation of Plaintiffs and the FLSA Collective.

117.    Because Defendants' violations of the FLSA have been willful, the

three-year statute of limitations of 29 U.S.C. § 255 applies.

<u>SECOND CLAIM FOR RELIEF</u>
(New York Minimum Wage Act, N.Y. Stat. § 650 *et seq.*
and 12 NYCRR § 142 brought by Plaintiffs
<u>for themselves and on behalf of the Class)</u>

118.    Plaintiffs, for themselves, and on behalf of the Class, repeat,

reallege and incorporate by reference all allegations in all preceding paragraphs.

119.    At all relevant times, Defendants have engaged in a widespread

pattern, policy and practice of willfully violating the NYLL.

120.    Throughout the Class Period, Defendants willfully failed and

refused to pay Plaintiffs and class members for all hours worked.

121.    Throughout the Class Period, Defendants willfully failed and

refused to pay Plaintiffs and class members for all overtime hours worked in

excess of forty hours per week in violation of NYLL § 663(1).

122.     Pursuant to 12 NYCRR §146-1.6, Defendants were required to compensate Plaintiffs and other similarly situated employees for one hour's pay at the minimum wage rate when they worked in excess of 10 hours in a given day.

123.     When Plaintiffs and other similarly situated employees worked more than 10 hours each day, Defendants failed to compensate Plaintiffs and other similarly situated employees the additional hour's pay (spread of hours pay) that they were owed.

124.     As a result of Defendants' violations of the NYLL, Plaintiffs and class members have suffered damages by being denied their minimum wage, overtime and spread-of-hours wages in accordance with the NYLL in amounts to be determined at trial, and are entitled to the recovery of those amounts, liquidated damages, prejudgment interest, attorneys' fees and costs.

125.     Defendants' failure to pay Plaintiffs and class members the minimum wage, overtime wages and spread of hours pay was willful within the meaning of NYLL § 663.

126.     As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiffs and the Class have sustained damages, including loss of earnings, in an amount to be established at trial, prejudgment interest, liquidated damages, costs, and attorneys' fees, pursuant to NYLL § 663.

THIRD CLAIM FOR RELIEF

(Illegal Pay Deductions and Deductions from Gratuities,
29 U.S.C. § 203(m) brought by Plaintiffs for themselves
and on Behalf of the FLSA Collective)

127.     Plaintiffs (Sanchez, Tapia and Soto) (the "Tipped Plaintiffs"), for

themselves and on behalf of the FLSA Collective, repeat, reallege and incorporate

by reference all allegations in all the preceding paragraphs.

128.     At all relevant times, Plaintiffs and the FLSA Collective were

employees of the Defendants.

129.     Defendants illegally retained portions of the Tipped Plaintiffs' and

the FLSA Collective's tips.  Specifically, Defendants failed to pay Plaintiffs all tips

they were owed.

130.     As a result of Defendants' willful and unlawful conduct, the

Tipped Plaintiffs and the FLSA Class are entitled to an award of damages in an

amount to be determined at trial, liquidated damages, costs and attorneys' fees.

FOURTH CLAIM FOR RELIEF

(Illegal Pay Deductions and Deductions from Gratuities,
NYLL §§ 196-d and 198-b brought by Plaintiffs
for Themselves and on Behalf of the Class)

131.     The Tipped Plaintiffs, for themselves and on behalf of Class

members, repeat, reallege and incorporate by reference all allegations in all

preceding paragraphs.

132.    At all relevant times, the Tipped Plaintiffs and Class members were Defendants' employees within the meaning of NYLL §§ 190 et seq., and supporting New York State Department of Labor Regulations.

133.    Defendants illegally retained substantial portions of the Tipped Plaintiffs' and Class members' tips.  Specifically, Defendants failed to pay Plaintiffs all tips they were owed.

134.    As a result of Defendants' willful and unlawful conduct, the Tipped Plaintiffs and Class members are entitled to an award of damages in an amount to be determined at trial, liquidated damages, costs and attorneys' fees.

## FIFTH CLAIM FOR RELIEF
### (NYLL Failure to Timely Pay Wages against all Defendants)

135.    Plaintiffs repeat, reallege and incorporate by reference all allegations in all preceding paragraphs.

136.    Pursuant to NYLL § 191, manual laborers must be paid no less frequently than once a week.

137.    Defendants unlawfully paid Plaintiffs less frequently than weekly.

138.    Defendants willfully and intentionally failed to the make wage payments timely, or at all, in violation of the NYLL and the supporting regulations of the Department of Labor.

139.    As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiffs and other similarly situated employees have sustained damages and seek recovery for unpaid wages in an amount to be determined at trial, along with attorneys' fees, costs and prejudgment interest as provided by NYLL § 198 and supporting regulations, and seek such other legal and equitable relief as this Court deems just and proper.

SIXTH CLAIM FOR RELIEF
(NYLL Failure to Notify against all Defendants)

140.    Plaintiffs repeat, reallege and incorporate by reference the prior allegations of this complaint as if fully alleged herein.

141.    Pursuant to NYLL § 195(1), within ten business days of Plaintiffs and other similarly situated employees' hiring, Defendants were obligated to provide them with a notice describing, inter alia, their hourly regular and overtime rates of pay.

142.    Pursuant to NYLL § 195(3), Defendants are obligated to provide Plaintiffs and other similarly situated employees with a wage statement, along with their rate of pay, their hours worked, and the pay period.

143.    Defendants failed to provide Plaintiffs and other similarly situated employees with a notice or paystub in accordance with NYLL § 195.

144.    As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiffs and other similarly situated employees have sustained damages and seek damages in accordance with NYLL § 198 for each week Defendants failed to provide such notice and paystubs, along with attorneys' fees, costs and prejudgment interest as provided by NYLL § 198 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

<u>SEVENTH CLAIM FOR RELIEF</u>

<u>(NYLL Article 7 § 215- Retaliation Against Plaintiffs Cruz)</u>

145.    Plaintiff Cruz repeats, realleges and incorporates by reference the prior allegations of this complaint as if fully alleged herein.

146.    NYLL § 215 prohibits an employer from terminating or disciplining an employee because "such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer had engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter."

147.    Plaintiff Cruz complained to defendants David Mundo and Geniton that he had not been paid wages that he was owed and repeatedly requested to be paid.

148.    In response to Cruz's complaints about Defendant's failure to pay them, Defendants summarily terminated his employment.

149.    Defendants retaliated against Cruz by firing him because of his complaints about Defendants' violations of the wage and hour laws and their failure to pay Plaintiffs.

150.    Plaintiff Cruz, in making the complaints about Defendants' violations of the wage and hour laws, engaged in an activity protected under NYLL Article 7, and provided Defendants with specific notice of their several and continuing violations of the wage and hour laws.

151.    A reasonable employee would have found Defendants' retaliatory acts described herein to be materially adverse, would dissuade a reasonable employee from making or supporting a complaint about wage and hour violations, and was intended to do so.

152.    Internal complaints by an employee to an employer constitute protected activity, which is sufficient to give rise to a claim of retaliation when an adverse employment action is the result of the complaints.   By engaging in the retaliatory acts alleged herein, Defendants retaliated against Cruz, discriminated against him, and penalized him in violation of NYLL Article 7, § 215.

153.    As a direct and proximate result of Defendants' unlawful conduct Cruz has suffered damages and is entitled to recover for retaliation in an amount to be determined at trial, including liquidated damages, prejudgment interest,

reasonable attorneys' fees and costs and punitive damages as provided by NYLL § 198 and supporting regulations, and such other legal and equitable relief as this court deems just and proper.

## EIGHTH CLAIM FOR RELIEF

(FLSA Retaliation Claim against all Defendants by Plaintiffs Cruz in violation of 29 U.S.C. § 215(a)(3))

154.    Plaintiffs Cruz repeats, realleges and incorporates by reference the prior allegations of this complaint as if fully alleged herein.

155.    29 U.S.C. § 215 prohibits employers from "discharg[ing] or in any other manner discriminating against . . . any employee because such employee had filed any complaint or instituted . . . any proceeding under or related to this chapter."

156.    In committing the above-mentioned retaliatory acts, Defendants discharged and retaliated against Cruz for complaining that Defendants violated the law.

157.    As a direct and proximate result of Defendants' unlawful conduct, Cruz has suffered damages and is entitled to recover for retaliation in an amount to be determined at trial, including liquidated damages, prejudgment interest, reasonable attorneys' fees and costs and punitive damages as provided by FLSA § 216(b) and supporting regulations.

<u>NINTH CLAIM FOR RELIEF</u>

(New York State Limited Liability Company Law § 609
<u>Liability of shareholders for laborers' wages)</u>

158.    Plaintiffs repeat, reallege and incorporate by reference the prior allegations of this complaint as if fully alleged herein.

159.    Plaintiffs have notified defendants Piacquadio, Gention and Seneca, in accordance with NYS Limited Liability Law § 609, that they seek to hold them personally liable, as shareholders of the constituent entities Space NY 50th Street LLC and Eden Ballroom LLC, for their unpaid wages and the unpaid wages of others.

WHEREFORE, the named Plaintiffs, individually and on behalf of all other similarly situated persons, requests the Court to grant the following relief:

A.  Designation of this action as a collective action on behalf of the putative FLSA Collective Plaintiffs (asserting FLSA claims and state claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in collective, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.  Designation of Plaintiffs as Representatives of the FLSA Collective;

C.  Designation of this action as a class action pursuant to Fed. R. Civ. P. 23;

D.  Designation of Plaintiffs as Representatives of the Class and counsel of record as Class Counsel;

E.  On the <u>First Claim for Relief</u>, judgment against the Defendants for the unpaid regular wages, overtime wages and liquidated damages

pursuant to 29 U.S.C. § 201 *et seq.* and the supporting United States Department of Labor regulations;

F.  On the <u>Second Claim for Relief</u>, unpaid wages, overtime wages, illegal deductions from wages, misappropriated tips and other unpaid wages pursuant to N.Y. Lab. Law Art. 6, §§ 190 *et seq.*, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations, plus liquidated damages;

G.  On the <u>Third Claim for Relief</u>, judgment against Defendants in the amount of the illegal pay deductions and deductions from gratuities made in violation of 29 U.S.C. § 203(m), plus liquidated damages;

H.  On the <u>Fourth Claim for Relief</u>, judgment against Defendants in favor of Plaintiffs and the Class Members in the amount of the illegal pay deductions and deductions from gratuities made in violation of the NYLL, and liquidated damages;

I.  On the <u>Fifth Claim for Relief</u>, pursuant to NYLL Art. 7, § 215, judgment against Defendants for Plaintiffs' lost wages and compensatory damages, including liquidated damages;

J.  On the Sixth Claim for Relief (Failure to Notify), damages pursuant to NYLL § 198 for each week Defendants failed to provide notice and paystubs, along with attorneys' fees and costs;

K.  On the <u>Seventh Claim for Relief</u> (Retaliation against Cruz in violation of NYLL § 215), damages in an amount to be determined at trial, including liquidated damages, prejudgment interest, reasonable attorneys' fees and costs and punitive damages;

L.  On the <u>Eighth Claim for Relief</u> (Retaliation against  Cruz in violation of the FLSA), damages in an amount to be determined at trial, including liquidated damages, prejudgment interest, reasonable attorneys' fees and costs and punitive damages;

M.  On the <u>Ninth Claim for Relief</u>, holding the Individual Defendants personally liable for the lost wages and compensatory and punitive damages of Plaintiffs and the Class Members pursuant to N.Y. Limited Liability Law § 609;

N.  Prejudgment and post-judgment interest, as provided by law;

O.  A declaration that the acts complained of herein are illegal;

P.  An injunction requiring Defendants to pay all statutorily-required wages pursuant to the New York Labor Law and to comply with the New York Labor Law in the future;

Q.  Costs of the action, including expert fees;

R.  Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663 and other applicable statutes; and

S.  Such other and further relief as this Court deems just and proper.


Date:  New York, New York
       June 23, 2017

                              Connolly Law

                              By:  /s/KERRY E. CONNOLLY
                                   Kerry E. Connolly

                              *Attorneys for Plaintiffs, the putative*
                              *FLSA Collective Plaintiff and the*
                              *Class Members*